May it please the court, Naginatka on behalf of the appellant, Michael Webb. Mr. Webb asks this court to exercise mini en banc review to correct its misinterpretation of 42 U.S.C. section 1997E subsection D2 in Shepard v. Gord. The court's interpretation in Shepard goes against canons of statutory interpretation, is unsupported by the plain text of the statute at odds with the language and other subsections of the PLRA, and is not supported by the legislative history. Michael Webb is an incarcerated person, was found by a jury to have meritorious claims for violation of his constitutional rights by correctional officers. The reading of section 1997E D2 taken by this court and others and advanced by defendants serves to curtail civil rights claims by legitimate victims like Mr. Webb. The plain language of 1997E D2 states, if the award of attorney's fees is not greater than 150% of the judgment, the excess shall be paid by the defendant. It does not specify what occurs where fees are greater than 150% of the judgment. And those... I'd like to bring you back just for a minute to your request of the exercise we do our mini en banc internal procedure, because I'm not seeing any court of appeals decision that reads the statute the way you do. Ordinarily we would convene en banc only if there were an intervening Supreme Court decision or a circuit split. But in fact, adopting your view would create a circuit split. Isn't that right? Yes, Your Honor. There are no other circuits that go a different way than Shepard. Yeah. So you're really asking us to overlook our own long-established precedent, very long-established precedent, and do whatever is necessary internally to reverse that. So that would mean convening the whole court en banc. We are asking to overturn the Second Circuit's previous precedent and go against the other circuits. But that is because the argument that we're advancing today was not considered in Shepard or in those other circuit cases. And it's not been adopted by any court so far? No, Your Honor. But that's because it hasn't been brought forth. In those other cases, the defendants were arguing that when the section apply and when the sentence applies, if the award of attorney's fees is not greater than 150 percent of the judgment, then the excess shall be paid by the defendant. And if it doesn't apply, then the excess shall be paid by the defendant, which made the sentence meaningless. But I think we all agree that that sentence still is infelicitous, but not so clear. And usually the fact that you have a new argument doesn't warrant convening en banc to reverse an established rule here. Even though we might agree with you on a policy matter, it's difficult to understand why Congress would have placed a 150 percent cap. So I'm having a little difficulty with your notion that all we have to do is do a mini en banc procedure and reverse our precedent. Maybe you could just state how you read that one sentence, or the two sentences, I guess, of the statute to make it crystal clear that there is no 150 percent cap.  Yes, Your Honor. The reading, our reading of that sentence is that in the cases where there is no greater than 150 percent of the judgment, the sentence applies and there is the excess shall be paid by defendant. And there are two sentences there, portions, right? And both of them use the word shall be applied, or shall. Yes. Both use shall. But the only sentence related to the excess of attorney's fees states that the excess shall be paid only, it's, excuse me, sorry, let me start again. It does not speak to what happens at all where the award is greater than 150 percent of the judgment. And we believe that in those cases, the most logical interpretation is that the default rule applies. So you would revert to Section 1988's? Except that we start out with 1997D, subsection D, saying, in any action brought by a prisoner in which attorney's fees are authorized under 1988, such fees shall not be awarded except to the extent, and then it, so it creates a reverse presumption to the 1988 authorization. Yes. There is a presumption that there is limitation to the 1998 with that are established within the PLRA. Not just limitation. It creates a presumption that they shall not be awarded unless these conditions are satisfied. Yes. In these conditions. And so we are saying that in the circumstance where the award is greater than 150 percent, you look at the other subsections of the PLRA. So the court would apply Section D1, and it would also apply Section D3. And it would look at the proportionality and the reasonability, and there would be a cap on hourly rates. But it doesn't say that. It doesn't say that. But it also doesn't say that in cases where it is greater than 150 percent, that. So I'm unclear now as to what work you think the last sentence of paragraph 2 does. The last, yes, Your Honor. The last sentence of paragraph 2, we've. If the award, et cetera, et cetera. Yes. We think that right in context with the first sentence, which states whenever a monetary judgment awards, it creates the not to exceed 25 percent will be paid from the judgment by the plaintiff. We think that it reads as both a reminder that the excess is paid by the defendant and a baseline. And what? And a baseline. It streamlines the litigation over attorney's fees in a certain subset of cases. It's assumed that it is reasonable and proportional in a case where the award is not greater than 150 percent. And where it is greater, the court can consider the other sections of the PLRA. But the statute says the excess shall be paid. Yes. If the award of attorney's fees is not greater than 150 percent of the judgment. It is completely silent when it is greater than 150 percent of the judgment, which makes the default rule, the other sections of the PLRA, 1 and section 3, the applicable rules in the occasion where it is silent. And we believe that that interpretation is more consistent with the legislative history, which is not to prevent meritorious claims like the one we have here. It's to prevent frivolous claims. We have to remember that Mr. Webb was successful and he was awarded damages here. And those are not the kinds of claims the PLRA was trying to curb. In addition, the results, if read the way that it has been previously, is that in cases where there is injunctive relief or equitable relief, you could get more damages than in cases of monetary relief. I see my time is up. Thank you very much. You retain two minutes for a vote. Yes, Your Honor. Thank you. May it please the Court. Good morning, Your Honors. Owen Jimenez on behalf of the Appalachians. Your Honors, 14 years ago, this Court held in Shepard v. Gore that the most natural reading of 42 U.S.C. section 1997ED2 caps attorney fees at 150 percent of the monetary judgment awards a plaintiff. To quote Shepard directly, the cap is compelled by the statutory language. In the 25 years since this issue was first phrased, nearly every other Federal Circuit Court of Appeals agrees, in fact, every court to have addressed the issue agrees with Shepard, and there are none that have adopted a contrary interpretation. So not surprisingly, I guess, our argument today is that Shepard was right, the other circuit courts were right, this issue is settled, and there is simply no reason at this point to revisit it, especially through the extraordinary process of mini on-bank review. Judge Carney, you admit? It still is a little surprising, right, that Congress knew how to impose an actual cap. They don't use cap language here. They use, frankly, impenetrable formulation that doesn't account for all different circumstances, and this in the context of, with 1988, as well as a statement that such fees shall not be awarded. At the same time, there's no evidence in the record that we can see that they intended to impose a hard cap. And your adversary is proposing a different kind of interpretation that creates a presumption of reasonableness and proportionality that seems, you know, in line with what Congress has expressed otherwise elsewhere in 1997E. So why shouldn't we consider that? That hasn't really been an argument that's been assessed by any of the courts to consider the statute before. Well, I think I disagree. The arguments that this plaintiff is making actually are very similar, and it's true, it's not every court that has agreed with Shepard has also agreed this could have been written better. It's not a model of clarity. That's what Shepard said. But nonetheless, it was compelled by the statutory language. And I think we've got to look at the plaintiff's argument, which I disagree that it's a brand-new novel argument, which you had asked the question before. Even if it was a new argument, the fact is the statute, this very statute, which has not changed, was squarely before Shepard, and it issued a square holding on what it means. So that fact that a new argument is raised is not enough to justify on-back review anyway. But Petitioner's own interpretation of the statute, I submit, is not a novel one. In fact, it's very similar, if not identical, to the interpretation that's been rejected by three different circuits, the Sixth Circuit in Walker, the Eleventh Circuit in Thompson, and the Third Circuit in Harris. And I'll go into that interpretation. The first part we all agree on. If the fee award is less than 150, ED2 applies, defendants are liable for all of it. So we definitely agree on that. Where we diverge, of course, is if the fee award is greater, according to plaintiff, there is no cap, and defendants are still liable for additional fees, which requires the district court to engage in further analysis under Section 1988B. But I thought that they were still suggesting that, indifferent from the arguments made elsewhere, that there was a presumption of reasonableness and proportionality that was embodied in that second sentence. Only, yes, I read their argument, and this is not a source of contention, is if it's under 150, then we don't dispute that that makes it, you know, the analysis ends and it's rebuttably proportionate. It's when it's over 150, we disagree with plaintiff who says that we now have to allow the district court's default. We heard her say it herself. They default to 1988B. District courts now have to grapple in some freewheeling kind of analysis without guidance as to what would be a proportionate fee if the cap, if it's over 150%, now there's just no cap. And I submit that that direction is found nowhere in the statute. It's certainly not the most natural reading. If further analysis was required under 1988 or other sections of 1997E, one would expect that Congress would have spelled them out instead of remaining silent. But if it were actually a cap, don't you think we'd expect Congress to have said there was a cap and it's 150%? Again, not a model of clarity, but that is how Shepard read this. And Shepard said the only way, the excess shall be paid by defendant but only if the award is not above 150%. The cap was compelled by the statutory language even if it could have been written a different way. And I don't think there's any disagreement about that. And plaintiff argues that her interpretation, that his interpretation would streamline things, but in fact it would just foster increased litigation because if there's no cap, district courts are forced to grapple with what's proportionate. We don't have a cap anymore for a monetary judgment. We can have three awards that are 200, 300, 400% above the judgment. And I submit that whatever you might think of the policy choices Congress made when it enacted the statute, they don't serve Congress's goals in making the PLRA. And they're the very problems that Congress sought to eliminate, which was to reduce attorney fees overall and protracted litigation over those fees. And I just want to... I mean, that's what district courts do every day. That's true. Figure out, I mean, sit on and think about and adjudicate fee applications that are typically multiple factors to consider. That's true. Why is this different? Well, because 1997E is an exception to that. And the Murphy Court, the U.S. Supreme Court, went out with... Murphy Court did not talk about the second sentence. It talked about the first sentence. But a similar argument was made that we should just simply default to 1988B, and that was rejected by the majority in Murphy, who reminded us that 1997E is a statute that, quote, seeks to restrain rather than replicate the discretion found in 1988B. If Congress had wished to confer the same discretion in 1997ED that it conferred in 1988B, we doubt very much it would have bothered to write a new law. And I think that applies with equal force here to the second sentence. And, yes, you know, there is still discretion that district courts have in these everyday applications. But what every court seems to agree on, including Shepard, was that this was an attempt to limit that and impose a hard cap. And Boivin is actually a very useful case. It was one of the first to actually address this issue, and it's cited extensively in Shepard. They recognized that the cap is actually an extension of the proportionality requirement in D.I. D.I. is generally understood to only apply to nonmonetary judgments, equitable relief like declaratory relief and injunctions. But as Boivin noted, because now we have a – with a money judgment, we actually have a concrete number. Congress presumably took advantage of this and said, this is – now we're going to go further and apply a cap in that situation. And this was something that Shepard found was supported by the language. And as far as the policy choices, you know, as you said in Shepard, whatever arguments can be mounted for or against them – and I don't think a new policy argument – these are kind of the same policy arguments that have been addressed at one point or another by either Shepard or other courts. The proper forum for the debate is Congress, not the courts. So unless there are any questions, I just rely on my brief. Thank you, sir. Thank you. Two brief points, Your Honors. As Your Honor stated, if Congress wanted to set a cap, it would have. It knows how to do it. It did it within the PLRA in subsection D3, saying no award of attorney's fees shall. They would have used that language. And when Congress uses particular language in one section and different in another, we presume that the word choice was intentional. Additionally, as to the court having to grapple with – Has any case flagged the issue that you were raising? Sorry, Your Honor. I didn't quite hear. Has any case flagged the issue that you were raising? No, Your Honor. In one of the cases, one of the plaintiffs raised a similar argument, and the court assumed that the argument was like the Walker argument, which is that the access would be paid by defendant in one case and in the other case, and that there is no meaning to the sentence. So the court hasn't grappled with this argument that – So then why is this case exceptional as opposed to simply unique to you and your client? It's not unique to our client specifically because the consideration – In the sense that it's never been raised before. The courts have not been presented with the opportunity to look beyond. Well, every case that applies this cap is an opportunity to make the same Yes. And it hasn't been done in these previous cases, and the courts have inaccurately looked only at the language of the one sentence and not gone farther to look beyond to the rest of the PLRA. And they've stopped at the plain language, but they also agree that the plain language is inartful, and they should go beyond that and to look at the rest of the context of the statute and the legislative history. For these reasons, we ask that the court review – With Mignon-Bonk review, hold that 42 U.S.C. 1997-82 does not impose a cap on attorney's fees and remand to the district court. Thank you. Thank you both. We have your argument. We'll take it under discussion.